UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 04-158-JBC**

**J.K., by his next friend,**
**H.M., his mother,**                                                                                              **PLAINTIFF,**

**V.**                              **MEMORANDUM OPINION AND ORDER**

**FAYETTE COUNTY BOARD OF EDUCATION,**                                      **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the plaintiff's motion for attorney's fees and costs (DE 22). The court, having considered the memoranda of the parties and being otherwise sufficiently advised, will deny the plaintiff's motion.

**I. Factual and Procedural Background**

The plaintiff, J.K., was diagnosed with Attention Deficit Hyperactive Disorder when he was four years old. Based on his diagnosis, J.K. qualifies for special education services under the Individuals with Disabilities Education Act (IDEA). The defendant, Fayette County Board of Education, is the local educational agency (LEA) charged with providing those services to J.K.

In 2003, J.K. completed the fifth grade at James Lane Allen Elementary. On April 28, 2003, the LEA held a meeting of the admissions and release committee (ARC) to facilitate J.K.'s transition to Beaumont Middle School (Beaumont). In the course of that meeting, the ARC revised J.K.'s individual educational program (IEP). The April 28, 2003, IEP essentially reiterated the short-term objectives stated in the previous IEP, dated November 25, 2002: (1) using appropriate language in

interactions with authority figures and peers; (2) using appropriate physical control in interactions with authority figures and peers; and (3) following instructions and completing assignments. The recommended individual modifications for classroom instruction were also substantially the same. The April 28, 2003, IEP also provided that the staff and faculty at Beaumont would receive training on the book *Explosive Child* by Ross Greene. The IEP also referred to a Behavior Intervention Plan (BIP).

On September 12, 2003, shortly after J.K. began middle school, the ARC met to evaluate and revise J.K.'s IEP in light of his adjustment to Beaumont. At this meeting, the ARC modified the BIP, supplemented the academic goals set forth in the IEP, and assigned J.K to a resource room for specialized attention. Another ARC meeting was held on October 13, 2003, at which time little or no progress had been made toward the objectives stated in J.K.'s IEP. At this meeting, the ARC discussed the possibility of increasing the time J.K. spent in the resource room, but no decision was made about his placement at that time.

The ARC met again on October 16, 2003. Prior to this meeting, J.K. had been arrested at school on September 13, 2003, and on October 14, 2003. The ARC found that more restrictive placement was necessary and that the current programming was not appropriate for implementing his IEP, particularly given his recent arrests. Therefore, the ARC decided to place J.K. in the resource room except for social studies and physical education. The ARC agreed to meet again on October 31, 2003.

During the October 16 meeting, J.K.'s mother suggested the possibility of sending J.K. to Kamp Kessa for one week.  Kamp Kessa is a therapeutic wilderness camp that receives referrals from juvenile courts and public school systems.  Ken Howard, the chairperson of the ARC, called the School Board to ask about the feasibility of placing J.K. at the camp and reported that funds could not be approved without a consensus being reached as to its appropriateness.  At that time, there was little information available to the ARC about the camp, and ARC members had doubts about safety, considering J.K.'s emotional instability, and about the propriety of such an adjustment to J.K.'s IEP.  Furthermore, the ARC felt that the full continuum of services at the school had not been exhausted and that outside placement was therefore not proper at that time.  J.K.'s mother sent him to Kamp Kessa despite the lack of assurance that she would be reimbursed for the enrollment fee of $650.

On October 20, 2003, J.K.'s mother requested a due process hearing.  Thus, the LEA rescheduled its October 31 meeting for November 10, 2003, so that an employee from the central office could be present.  At the November 10 meeting, the ARC held its annual review of J.K.'s situation.   The ARC made substantial revisions to the IEP, such as elaborating on his then-current performance levels and re-stating his short-term objectives.

The ARC met again on November 12, 2003, to continue the November 10 meeting and discuss J.K.'s placement.  At that time, they decided to request staff

3

training in life/space crisis intervention from the school board.  The ARC resolved that multiple adults should be present in the classroom to help J.K.  The ARC assigned J.K. to the resource room all day, during physical activities and breaks as well as class time, and planned to physically reorient the classroom to provide an area for J.K. to use for de-escalation when he became anxious or stressed.

A local hearing officer (LHO) held a due process hearing on December 2 and 3, 2003.  The issues that J.K. directed to the LHO were (1) whether the LEA failed to implement J.K.'s IEP; (2) whether the LEA assigned J.K. to the least restrictive environment; (3) whether the LEA had conducted an appropriate ARC meeting during the 2003-04 school year; and (4) whether the LEA's refusal to reimburse J.K. for Kamp Kessa constituted a denial of a free and appropriate public education (FAPE) as guaranteed under IDEA.  J.K later filed a claim that the LEA had inappropriately cancelled the October 31, 2003, meeting against the wishes of J.K.'s parent.  J.K. requested the following relief: placement of J.K. in the least restrictive environment, the development of a behavior modification plan, reimbursement for enrollment at Kamp Kessa, and appropriate staff training.

The LHO concluded that the ARC violated IDEA procedure by failing to properly modify J.K.'s IEP.  The LHO further found that the procedural violation denied J.K. a FAPE because the IEP did not address J.K.'s attendance problem and was not adequately implemented.  The LHO determined that J.K.'s placement at Kamp Kessa was appropriate and that J.K. was entitled to reimbursement.

The LEA appealed the LHO's decision to the Exceptional Children Appeals Board (ECAB). The ECAB reversed the LHO's holding that the failure to modify the IEP was a violation of IDEA, because the ARC members, including J.K.'s mother, at all times agreed that the IEP was appropriate. Because J.K.'s mother did not give the LEA a sufficient opportunity to implement the IEP, there was no indication that the LEA was incapable of providing J.K. a FAPE. Furthermore, even if the LEA had not been able to provide a FAPE, given the limited information on and duration of the Kamp Kessa program, the LHO erred in concluding that unilateral placement at Kamp Kessa was appropriate in the context of the IEP. Therefore, the ECAB ruled that the defendant could not be required to compensate J.K. for the cost of attending Kamp Kessa.

J.K. then appealed the ECAB's decision to this court. This court denied J.K.'s motion to dismiss the ECAB's decision and reversed all but two of the ten numbered paragraphs in the LHO's original order. Specifically, this court found that the LEA had complied with the procedures required of it by IDEA; that J.K.'s IEP was appropriate in light of J.K.'s "unique needs" and had been executed in good faith and in a manner that satisfied IDEA, particularly considering that the LEA had not been given a chance to fully implement it; that, because J.K. had not demonstrated that his IEP was inappropriate and that he could not receive a satisfactory FAPE from the LEA, J.K. was not entitled to reimbursement for attending Kamp Kessa or any compensatory education benefits for any educational

services missed during 2003-04. The court additionally found that the LEA was under no obligation to train law enforcement officers that work on school premises and that staff assigned to work with J.K. had been adequately trained. This court did, however, affirm that part of the LHO's order that required the LEA to convene an ARC meeting as soon as possible to reevaluate J.K. and develop an appropriate IEP for him.

**II. Legal Analysis**

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability . . . ." 20 U.S.C. § 1415(i)(3)(B). In *Hensley v. Eckerhart*, 461 U.S. 424 (1983),[1] the Supreme Court held that, to be entitled to attorney's fees, a plaintiff must first qualify as a "prevailing party." *Id.* at 433. Once that requirement is met, the district court must then determine what fee is "reasonable." *Id.*

The LEA argues that J.K.'s motion for attorney's fees fails both of the *Hensley* requirements: that J.K. is not the prevailing party and that J.K. has not provided the court with sufficient information to permit it to determine the reasonableness of any fee award.

To be a "prevailing party," a party must succeed on any significant issue in

---

[1] Although the *Hensley* Court was construing 42 U.S.C. § 1988, not § 1415(i)(3)(B), the Sixth Circuit has held that "the IDEA's fee-shifting provision is to be interpreted consistent with 42 U.S.C. § 1988 . . . ." *Wikol* ex rel. *Wikol v. Birmingham Public Schools Board of Education*, 360 F.3d 604, 611 (6th Cir. 2004).

litigation which achieves some of the benefit the parties sought in bringing suit. *Phelan v. Bell*, 8 F.3d 369, 373 (6th Cir. 1993) (citing *Hensley*, 461 U.S. at 433). A plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties in a way that directly benefits the plaintiff. *Phelan*, 8 F.3d at 373 (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). The definition of a prevailing party is a generous formulation that brings the plaintiff only across the statutory threshold. *Krichinsky v. Knox County Schools*, 963 F.2d 847, 850 (6th Cir. 1992) (internal quotations and citation omitted). Even a party who partially prevails is entitled to an award of attorney's fees commensurate to the party's success. *Phelan*, 8 F.3d at 373.

The "benefits sought" by J.K. in the filing of this suit are clearly described in his request for a due process hearing. In its order, this court ruled against J.K. on every issue he raised for consideration before the LHO and denied every form of relief he requested, including the supplemental issue he raised before the LHO.[2] Most notably, the court specifically found that the IEP and BIP were reasonably implemented and consistently reviewed, the procedural requirements of the IDEA were honored, the LHO erred in finding that J.K. had not been placed in the least restrictive environment, the staff who worked with J.K. were appropriately trained, J.K. was not deprived of a FAPE, and J.K. was not entitled to reimbursement for

---

[2]In fact, the LHO originally ruled against J.K on this supplemental issue, stating that "[t]he LEA's action in rescheduling the October 31, 2003 ARC meeting to November 10, 2003 was reasonable and did not constitute a violation of the procedural rights of the student or his family" (Final Decision and Order, p. 40).

his enrollment at Kamp Kessa or a compensatory education equivalent.  As this is the case, J.K. clearly did not prevail on any significant issue in litigation which achieves some of the benefit he sought in bringing suit.

Similarly, the court's order did not bring about a material alteration of the parties' legal relationship.  Although this court directed the LEA to conduct an ARC meeting as soon as practicable and develop a proper IEP for J.K, it does not follow that these requirements created any change in the parties' legal positions.  As the LEA correctly points out, this affirmation of the LHO's opinion did not direct the LEA to take any affirmative action that it had not already taken or planned to take in the future.  Indeed, the ruling did not even create any obligations on the part of the LEA that were not already demanded of it.  Pursuant to federal law, an LEA is required to establish an IEP for a disabled child and update, develop, and adjust the IEP as needed.  *See* 34 C.F.R. §§ 300.340–300.347.  An order requiring a government agency to perform a pre-existing duty cannot be said to generate a meaningful alteration of the parties' legal relationship.

J.K. nonetheless argues that, because this court affirmed two paragraphs of the LHO's order granting him relief, he is entitled to an award of fees as to those points.  This contention misstates the meaning of the term "significant issue" as it was used in *Hensley*.  A party does not succeed on a significant issue in litigation simply because a district court rules in its favor.  The Sixth Circuit's opinion in *Berger v. Medina City School District*, 348 F.3d 513 (6th Cir.2003), is illustrative

8

of this point.  In *Berger*, the plaintiffs filed a Due Process hearing request, the stated goal of said hearing being reimbursement for educating their son, Travis, who had a profound hearing loss, at a private school.  The district court held that, although Travis had been denied an FAPE due to the inadequacy of his IEP, the plaintiffs were not entitled to attorney's fees as a prevailing party because they were unsuccessful in recovering reimbursement for his private-school education.  The Sixth Circuit affirmed this result on appeal, stating that the finding that the defendant had failed to provide Travis an FAPE, "while favorable to plaintiffs, does not constitute success on a significant issue in this litigation." *Id.* at 526.

The case at hand presents an even less compelling case for an award of attorney's fees.  While the plaintiffs in *Berger* established that the defendants had denied some legal right to their son, this court only required the LEA to do what it was already legally obligated to do.  J.K. has not shown that he succeeded on any significant issue in this litigation or that his efforts led to a material alteration in the parties' relationship that inured to his benefit.  He was not the prevailing party in this case.  Because the court finds that J.K. was not the prevailing party, it does not consider whether the attorney's fees requested by J.K. are reasonable.  Accordingly,

**IT IS ORDERED** that J.K.'s motion for attorney's fees and costs (DE 22) is **DENIED**.

Signed on August 1, 2006

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

10